## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES CRAWFORD, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 14-cv-0436 (KBJ) |
|  | ) | |
| JEH JOHNSON, *Secretary*, *Department of Homeland Security*, | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff James Crawford is an African-American employee of the Department of Homeland Security ("DHS") who claims that DHS discriminated against him on the basis of his race, subjected him to a hostile work environment, and retaliated against him because of his engagement in protected activity, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17.  (*See generally* Compl., ECF No. 1.)  Crawford filed the instant complaint against Jeh Johnson, in his official capacity as Secretary of DHS ("Defendant"), in March of 2014, alleging that DHS employees intentionally targeted him with eleven discrete discriminatory and/or retaliatory acts that have commission dates ranging from November of 2010 to December of 2011.  (*See id.* at 2–3.)[1]  On February 9, 2015, this Court granted Defendant's partial motion to dismiss Crawford's complaint as conceded, and thereby dismissed the complaint's allegations with respect to eight of the eleven allegedly

---

[1] Page numbers herein refer to those the Court's electronic filing system automatically assigns.

discriminatory and/or retaliatory events, but the Court also ordered Defendant to answer or otherwise respond to Crawford's remaining contentions—*i.e.*, his assertion that DHS violated Title VII when it (1) issued an unwarranted negative annual performance appraisal of him in October of 2011, (2) appointed a less-qualified individual to a supervisory position above him in November of 2011, and (3) suspended him from work without just cause in December of 2011.  (*See* Mem. Op. & Order, ECF No. 5, at 2.)

Before this Court at present is DHS's motion to dismiss, or in the alternative for summary judgment, with respect to these three allegedly discriminatory and/or retaliatory acts of Defendant.  (*See* Def.'s Mot. to Dismiss or[] in the Alternative[] for Summ. J. ("Def.'s Mot."), ECF No. 8.)   DHS maintains that it is entitled to dismissal of the complaint's claims with respect to all three events because Crawford did not include any of these allegedly discriminatory or retaliatory acts in his formal Equal Employment Opportunity ("EEO") pleading, and thus, Crawford failed to exhaust his administrative remedies.  (*See id.* at 10–11.)  Alternatively, Defendant contends that the complaint fails to state a retaliation claim with respect to the negative performance appraisal because Crawford had not engaged in prior protected activity, and also that summary judgment should be granted in Defendant's favor because DHS had legitimate non-discriminatory reasons to suspend Crawford.  (*See id.* at 11–14.)  In response, Crawford asserts only that he attached certain exhibits to his initial EEO complaint that touch upon the three events at issue here, and that this Court should treat these exhibits as having been integrated into the EEO complaint for the purpose of its evaluation of the exhaustion issue.  (*See* Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 11, at 4.)

Upon consideration of the parties' submissions, the relevant authorities, and the record as a whole, this Court concludes that Crawford's attachment of exhibits was insufficient to exhaust administrative remedies with respect to the three alleged instances of discrimination or retaliation that remain at issue in the instant case. Consequently, and as explained fully below, Defendant's motion will be **GRANTED**.

A separate order consistent with this Memorandum Opinion will follow.

## I.    BACKGROUND

### A. Facts

James Crawford is a Special Security Officer ("SSO") at DHS's Special Security Programs Division in Washington, D.C.  (*See* Compl. at 4.)  According to Crawford, on eleven distinct occasions between November of 2010 and December of 2011, several DHS management officials and supervisors retaliated and/or discriminated against him on the basis of his race.  (*See id.* at 2–3.)  Crawford maintains, for example, that he was unreasonably denied leave requests, that management officials conspired against him and allegedly made false statements about his performance, and that unlike his white male counterparts he did not receive additional assistance personnel when he requested it from his superiors.  (*See id.* at 2.)  Crawford first contacted an EEO counselor on October 25, 2011, to report eight incidents of discrimination that allegedly occurred in the eight months between November of 2010 and July of 2011.  (*See id.*)  Crawford alleges that three additional incidents happened in the months that followed—specifically, that, on October 21, 2011, he received a negative annual performance appraisal that was entirely unjustified; that an unknown, less-qualified individual was

appointed to a supervisory position above him on November 1, 2011; and that he was suspended from work without just cause on December 12, 2011.  (*See id*. at 3.)

Subsequent informal attempts to resolve Crawford's claims proved unsuccessful, and on February 7, 2012, Crawford filed a formal EEO complaint.  (*See id.* at 2; Pl.'s Opp'n at 2.)  The body of the administrative complaint specifically alleged that Crawford had been subjected to a hostile work environment and/or reprisal based on the first eight allegedly discriminatory actions that Crawford had spoken to the EEO counselor about in October of 2011.  (*See* Compl. at 2.)  Crawford also purportedly attached exhibits that referenced at least two of the three additional incidents detailed above.[2]  (*See* Pl.'s Opp'n at 4; Def.'s Mot. at 10, n.1.)  Thereafter, the DHS's EEO office requested clarification of the scope of Crawford's complaint (*see* Decl. of Oscar Toledo, Ex. 2 to Def.'s Mot., ECF No. 8-2, at 1), and informed Crawford that it had identified for investigation only the eight incidents of alleged discrimination and/or retaliation that were specifically referenced in the body of the EEO complaint.  (*See* Request for Clarification Email, Ex. 1 to Decl. of Oscar Toledo, ECF No. 8-2, at 3–5.) Crawford was silent regarding the three additional events that purportedly were revealed in the attachments to his complaint, and ultimately, the EEO office dismissed Crawford's formal complaint for technical reasons unrelated to the instant action.[3]  (*See* Compl. at 4–6.)

---

[2] Crawford has not furnished the exhibits to his EEO complaint for this Court's review, and has not specified what they entail or what incidents they refer to.  But Defendant concedes that, at a minimum, Crawford attached a copy of his annual performance appraisal and the notification letter regarding his suspension.  (*See* Def.'s Mot. at 10, n.1.)

[3] Specifically, the EEO office of DHS dismissed the complaint as untimely on August 7, 2012, and the EEO Commission itself affirmed that dismissal on December 13, 2013.  (*See* Compl. at 4–6.)

### B.  Procedural History

Crawford filed the instant lawsuit on March 18, 2014, claiming that DHS had committed eleven separate acts—the eight events that were referenced specifically in the body of the EEO complaint plus the additional three that allegedly occurred between October and December of 2011—that were discriminatory and/or retaliatory in violation of Title VII.  (*See id*. at 1–3.)  On June 2, 2014, DHS filed a motion to dismiss Crawford's action for failure to exhaust administrative remedies, but its motion was directed only at Crawford's claims regarding the eight initial events (*i.e.*, those that took place between November of 2010 and July of 2011) and did not address the three events that allegedly occurred in the fall of 2011.  (*See* Def.'s Mot. to Dismiss, ECF No. 3, at 8.)  Upon receipt of Defendant's partial motion, this Court advised Crawford (who was proceeding *pro se* at that time) of his obligation under the Federal Rules of Civil Procedure and the local rules of this Court to respond by July 21, 2014, and warned him that if he did not respond, the Court might render Defendant's motion conceded.  (*See* Order, ECF No. 4, at 1.)  Crawford failed to file a timely opposition despite this warning, however; and on February 9, 2015, this Court granted Defendant's motion and dismissed the complaint's allegations regarding the eight challenged claims. (*See* Mem. Op. & Order, at 2.)

Notably, at that same time, the Court also ordered DHS to answer or otherwise respond to the three remaining allegations of discrimination/retaliation in Crawford's complaint.  (*See id.*)  Defendant filed the instant motion to dismiss, or in the alternative for summary judgment, on March 9, 2015.  In the motion, Defendant primarily argues that Crawford failed to exhaust his administrative remedies with respect to the remaining allegations because he did not include them in his EEO complaint.  (*See*

Def.'s Mot. at 10–11.)  Crawford has responded (*see generally* Pl.'s Opp'n), and the motion is now ripe for this Court's review.

## II.    LEGAL STANDARDS

### A.    Exhaustion Of Administrative Remedies As A Prerequisite To Filing Suit In Federal Court Under Title VII

A federal employee who seeks to file a civil action against his employer under Title VII in federal district court generally must first exhaust available administrative remedies.  *See* 42 U.S.C. § 2000e-16(c); *see also Kizas v. Webster*, 707 F.2d 524, 543 (D.C. Cir. 1983) ("[T]he required recourse to administrative review has special prominence with respect to the . . . claims of federal employees[.]").  Whereas discrimination claims against private employers are filed directly with the Equal Employment Opportunity Commission ("EEOC"), claims against a federal agency must initially be brought before the agency's EEO office itself.  *See Kizas*, 707 F.2d at 543–44.  "The exhaustion requirement gives the charged agency notice of the claim, provides a chance to narrow the issues for prompt adjudication, creates an opportunity to resolve the matter internally [,] and [avoids] unnecessarily burdening the courts." *Cheatham v. Holder*, 935 F. Supp. 2d 225, 234 (D.D.C. 2013) (alterations in original) (internal quotation marks and citations omitted).

The regulatory framework that applies to federal employees navigating the process of administrative exhaustion is laid out in Part 1614 of Title 29 in the Code of Federal Regulations.  *See* 29 C.F.R. Part 1614.  To fulfill Title VII's exhaustion requirements under these regulations, the employee must first contact the agency's EEO counselor within 45 days of the alleged violation, and then file a formal administrative complaint with the agency's EEO office, allowing the agency to have an opportunity to

investigate the allegations and render a final decision.  *See Dick v. Holder*, 80 F. Supp.

3d 103, 110 (D.D.C. 2015) (citing 29 C.F.R. §§ 1614.105, 1614.106, 1614.108,

1614.407).  Filing an individual formal complaint of discrimination typically involves

completing a standard DHS form and describing the circumstances surrounding the

allegedly discriminatory actions, the relevant dates, names of individuals responsible

for the action, and the resulting harm upon claimant.  (*See, e.g.*, EEO Compl., Ex. 1 to

Def.'s Mot. to Dismiss, ECF No. 3-1, at 3.)  The agency's EEO office reviews the

employee's complaint and identifies for investigation any claims sufficiently described

in the complaint that were previously discussed in pre-complaint counseling.  *See* 29

C.F.R. §§ 1614.106(c), 1614.105(b)(1).  The agency then informs the complainant of

the claims identified for investigation and of his right to modify the agency's

interpretation.  *See* EEOC, Mgmt. Directive 110, ch. 5, *Agency Processing of Formal

Complaints* (2011), 2011 WL 10843310 (outlining the agency's obligation to send an

"acceptance letter" to inform the complainant of "the claim(s) asserted and to be

investigated[,]" and the employee's opportunity to "submit a statement to the agency

concerning the agency's articulation of the claim, which shall become a part of the

complaint file").

   Once a formal administrative complaint is filed and the agency has a chance to

conduct its own investigation and make a determination about the charges, the

employee may subsequently file a civil action in federal district court, but he or she

must do so within 90 days of receipt of the agency's final decision "or after a complaint

has been pending for at least 180 days."  *Koch v. Walter*, 935 F. Supp. 2d 143, 149

(D.D.C. 2013).  Because contacting an EEO counselor is a prerequisite to filing a

formal EEO complaint, *see* 29 C.F.R. § 1614.105(d)—which, in turn, is a prerequisite to administrative exhaustion, *see id.* § 1614.407—a plaintiff must *both* timely discuss a claim with an EEO counselor *and* file a formal EEO complaint with regard to that particular claim in order to be able to raise the allegation in the subsequent civil lawsuit.  In other words, to exhaust an issue raised informally during pre-complaint counseling fully, an employee must proceed to include the issue in the formal EEO complaint that is filed with the agency.  *See Hamilton v. Geithner*, 666 F.3d 1344, 1350 (D.C. Cir. 2012) (stating that the informal presentation of a claim to an EEO counselor was insufficient to establish administrative exhaustion of that claim, where plaintiff later failed to ensure that the claim was included in the body of the formal EEO complaint).  It is well established that a plaintiff who files suit under Title VII may only bring "those allegations that were contained in the EEO complaint" or claims "like or reasonably related" to the allegations in a timely-filed EEO complaint.  *Bell v. Donley*, 724 F. Supp. 2d 1, 8 (D.D.C. 2010) (citation omitted); *accord Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Moreover, each discrete incident of discrimination or retaliation constitutes a separate actionable "unlawful employment practice" for which a plaintiff must exhaust his administrative remedies or lose the ability to recover for it in the context of the civil action.  *See Morgan*, 536 U.S. at 114–15.

Notably, although Title VII's exhaustion requirements are not jurisdictional in nature, exhaustion is a mandatory element of a Title VII claim that is akin to a statute of limitations. *See Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011); *see also Bell*, 724 F. Supp. at 6 (quoting *Douglas v. Donovan*, 559 F.3d 549, 556 n.4 (D.C.

Cir. 2009)).  As such, failure to exhaust will ordinarily bar a judicial remedy.  *See*

*Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985).

### B.  Motions To Dismiss, Or In The Alternative For Summary Judgment, For Failure To Exhaust Administrative Remedies

"[M]otions to dismiss Title VII claims for failure to exhaust administrative

remedies are [typically] analyzed under Federal Rule of Civil Procedure 12(b)(6)."

*Mount v. Johnson*, 36 F. Supp.3d 74, 80 (D.D.C. 2014); *see also Mahoney v. Donovan*,

824 F. Supp. 2d 49, 58 (D.D.C. 2011) (internal quotation marks and citations omitted)

(explaining that "a 12(b)(6) motion to dismiss for failure to state a claim upon which

relief can be granted is the appropriate vehicle to challenge an alleged failure to exhaust

administrative remedies under Title VII[,]" in contrast to a motion brought under Rule

12(b)(1)).  However, "[t]he defendant bears the burden of proving by a preponderance

of the evidence that the plaintiff has failed to exhaust his administrative remedies[,]"

*Ndondji v. InterPark Inc*., 768 F. Supp. 2d 263, 276 (D.D.C. 2011) (citing *Bowden v.*

*United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)), and if materials outside the

pleadings that are submitted to satisfy this burden or otherwise address the exhaustion

issue are relied upon by the court, the court should treat the motion as one for summary

judgment under Rule 56, *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6)

or 12(c), matters outside the pleadings are presented to and not excluded by the court,

the motion must be treated as one for summary judgment under Rule 56.").  In this case,

the record includes materials that are not clearly referenced or relied upon in the

complaint to establish exhaustion (*see, e.g.*, Suspension Letters Attach. to EEO Compl.,

Exs. 2 & 3 to Def.'s Mot. to Dismiss, ECF No. 3-1, at 9–18; Performance Appraisal

Attach. to EEO Compl., Ex. 1 to Def.'s Mot., ECF No. 8-1), and Crawford's sole

argument in opposition to the pending motion to dismiss, or in the alternative, motion

for summary judgment is that he did, in fact, attach certain exhibits to his EEO charge

(*see* Pl.'s Opp'n, at 4.)  Under these circumstances, this Court finds that it must

consider these materials in order to evaluate the validity of Defendant's contention that

Crawford failed to exhaust his administrative remedies, and therefore, it will treat

Defendant's motion as one for summary judgment under Rule 56.  *See Lane v.*

*Tschetter*, 05-cv-1414, 2007 WL 2007493, at *2 (D.D.C. July 10, 2007) (noting that

"summary judgment rather than dismissal is the appropriate procedural device for

analyzing whether there was timely administrative exhaustion").

A court may grant summary judgment under Rule 56 when "the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that is

capable of affecting the outcome of the litigation, *see Anderson v. Liberty Lobby Inc.*,

477 U.S. 242, 248 (1986), and a genuine issue is one in which the "evidence is such that

a reasonable jury could return a verdict for the nonmoving party[,]" *id.*  In considering a

motion for summary judgment, the court regards the non-movant's statements as true

and draws all reasonable inferences in his favor.  *See id.* at 255.  Merely "colorable" or

insignificantly probative evidence, however, is not enough to preclude summary

judgment; instead, the non-movant must support his position beyond the pleadings and

point to specific facts in affidavits, depositions, answers to interrogatories, or

admissions on file that raise genuine issues for trial.  *See id.* at 249–50; *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III.   ANALYSIS

Crawford claims that DHS discriminated and/or retaliated against him between October and December of 2011, when it (1) gave him a negative performance evaluation, (2) promoted a less-qualified individual to be his superior, and (3) suspended him without justification.  DHS argues that Crawford failed to exhaust his administrative remedies with respect to these alleged violations of Title VII because he neither asserted allegations related to these events in his EEO complaint nor included them in his response to the EEO office's request for clarification.  (*See* Def.'s Mot. at 10–11.)  Crawford's response to this assertion consists of a single contention: that, after "the EEO counselor did not fully understand the exact nature of [his] concerns or claims[,]" he proceeded to "file[] a[n EEO] complaint which in its body sited examples of harassment but were referenced in attachments[,]" and the "examples of harassment [in] the attachments should have been viewed and integrated into the complaint as evidence of the sited harassment."[4]  (Pl.'s Opp'n at 4.)

Unfortunately for Crawford, the precedents in this district establish that the inclusion of specific instances of discrimination *solely in attachments* to an EEO complaint (without referencing those events in the body of the complaint itself or objecting to the agency's omission) is insufficient to establish exhaustion of administrative remedies, as explained below.  Moreover, Crawford failed to amend his EEO complaint to include the specific allegations that he says were reflected in the

---

[4] Notably, Crawford does not argue that the three incidents were "like or reasonably related" to the eight incidents that were included in the EEO complaint, nor does he dispute DHS's assertion that the administrative complaint itself was not timely filed.  *See Pearsall v. Holder*, 610 F. Supp. 2d 87, 98 n.9 (D.D.C. 2009) (holding that plaintiff's unfiled claims were outside the scope of the civil lawsuit, even if "like or related to" his administrative claims, because his formal EEO complaint was neither timely asserted nor exhausted).

attachments, even after it became clear that the EEO office had not considered those events in its adjudication of Crawford's discrimination and retaliation claims.  Thus, this Court agrees with Defendant that Crawford failed to exhaust his administrative remedies with respect to these three alleged Title VII violations.

### A. Crawford's Formal EEO Complaint Did Not Include The Three Instances Of Alleged Discrimination And/Or Retaliation Challenged Here, Despite The Attachments

Title VII states that the formal charge of discrimination that an aggrieved employee submits to an agency in order to fulfill the exhaustion obligation must "be in writing under oath or affirmation and shall contain such information and be in such form as the [EEO] Commission requires."  42 U.S.C. § 2000e–5(b).  Under EEOC regulations, a formal complaint "must contain a signed statement" that is "*sufficiently precise* to identify the aggrieved individual and the agency and *to describe generally the action(s) or practice(s) that form the basis of the complaint*[,]" 29 C.F.R. § 1614.106(c) (emphasis added), and while a plaintiff need not use precise "magic words[,]" he cannot merely rely on "vague or circumscribed" charges—in other words, the EEO complaint must sufficiently "alert the EEOC and the [agency] with the nature of the alleged wrongdoing." *Maryland v. Sodexho, Inc.*, 474 F. Supp. 2d 160, 162 (D.D.C. 2007).

Crawford clearly failed to satisfy these requirements with respect to the three events in question here.  First of all, it is undisputed that Crawford did not specifically reference the negative performance appraisal, the unknown individual's appointment to a supervisory position, or the work suspension incident in the body of his formal EEO complaint, and the agency did not identify these three alleged incidents for investigation.  (*See* Compl. at 2.)  Nor can Crawford rely upon the fact that he allegedly

informally communicated these three incidents to the EEO officer prior to his filing of the formal complaint (*see id.* at 3); even so, he manifestly failed to list those events in the formal charges that he subsequently filed with the agency, and it is well established that a plaintiff "cannot rely on the EEO counseling report to establish exhaustion of a claim that he failed to include in his formal complaint[,]" *Hamilton*, 666 F.3d at 1350; *see also Pintro v. Wheeler*, 35 F. Supp. 3d 47, 55 (D.D.C. 2014) (holding that the filing of an informal complaint is insufficient for Title VII exhaustion).

What is more, persuasive authorities in this district have squarely rejected the contention that information revealed only in exhibits attached to an EEO complaint should be treated as having been incorporated into the final complaint for exhaustion purposes. (*See* Pl.'s Opp'n at 4.) The plaintiff in *Dick v. Holder*, 80 F. Supp. 3d 103 (D.D.C. 2015), for example, asserted that the "package containing his formal EEO charge" had included a copy of a letter that he had previously sent to an EEO counselor, which described additional claims that were not raised in the EEO complaint itself, and that these additional claims should have been identified by the agency and incorporated into his formal EEO complaint. *Id.* at 112–13. In its analysis, the *Dick* court explained that, although "[a]n agency may not unreasonably omit claims from investigations[] in hopes that a complainant's tardy realization of the omission will constitute a failure to exhaust[,]" *id.* at 114, where "the formal EEO charge neither explicitly incorporated the [exhibit] nor . . . made any mention" of the discrete additional claims, the agency cannot be said to have acted unreasonably in failing to identify the claims as part of the formal EEO complaint. *Id.*

So it is here.  Even if this Court accepts as true Crawford's statement that he included "attachments" to his EEO complaint "as evidence of the sited harassment" (Pl.'s Opp'n at 4), it is clear on the face of the administrative pleading that Crawford did not reference or specifically incorporate those exhibits into the body of his EEO complaint (*see* EEO Compl. at 2–6), and given this failure, DHS's omission of the three additional claims that were buried in Crawford's exhibits was entirely reasonable. *See Dick*, 80 F. Supp. 3d at 114; *see also Cook v. McHugh*, No. 14-cv-00058-LTB-CBS, 2015 WL 4100423, at *7 (D. Colo. May 26, 2015) (finding that the agency's omission of a claim not clearly alleged or factually described in the EEO complaint was not unreasonable); *Mendoza v. Reno*, No. EP–00–CA–008–DB, 2001 WL 681297, at *4 (W.D. Tex. Jan. 11, 2001) ("The Court finds that those thirty or so words, buried deep within six pages of stories . . . do not sufficiently set forth a national origin claim[.]"). Thus, Crawford's argument that his EEO complaint should be construed as having included allegations with respect to the three incidents by virtue of his having attached exhibits is unavailing.

### C. Crawford Did Not Seek To Amend The Formal EEO Complaint To Include The Three Remaining Claims

It is also clear based on the instant record that Crawford failed entirely to take specific steps to ensure that the three omitted contentions were actually incorporated into the formal complaint, even though he had the opportunity to do so.  (*See* Decl. of Oscar Toledo at 1–2.)  To be sure, Crawford alleges that he requested that the three claims be added to his EEO complaint at some unspecified time (*see* Compl. at 2); however, there is no allegation or evidence that he sought to amend his EEO complaint "prior to the conclusion of the investigation" in order to ensure that the three remaining

14

claims were included, much less that he successfully accomplished any such an amendment, *see* 29 C.F.R. § 1614.106(d) ("A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint."). And it is clear beyond cavil that, "where an agency reasonably fails to identify for investigation a[n employment discrimination] claim indirectly asserted in a plaintiff's administrative charge, and where the plaintiff does not timely object to this omission before the agency, the plaintiff cannot show that he has exhausted administrative remedies as to this claim." *Dick*, 80 F. Supp. 3d at 114–15; *accord McKeithan v. Boarman*, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) (internal quotation marks and citations omitted) ("[F]ailure to respond to the [agency's] framing of the issue supports a finding that a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO.").

Thus, given the absence of any allegation that Crawford either timely filed a formal EEO complaint addressing the three remaining issues, or, at the very least, filed a timely objection to the EEO's failure to include those issues, this Court cannot conclude that Crawford has exhausted all available administrative remedies, and Defendant's motion must be sustained.

## IV.  CONCLUSION

With respect to the three allegedly discriminatory and/or retaliatory acts remaining in Crawford's complaint, the record is such that there is no genuine issue of material fact regarding Crawford's failure to exhaust his administrative remedies as Title VII requires. Therefore, as set forth in the accompanying order, Defendant's

motion is **GRANTED**, and summary judgment will be entered in its favor regarding the

remaining claims.

DATE:  February 26, 2016                    *Ketanji Brown Jackson*
                                            KETANJI BROWN JACKSON
                                            United States District Judge